McGREGOR W. SCOTT
United States Attorney
CATHERINE CERNA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
(916) 554-2700
PETER D. KEISLER
Assistant U. S. Attorney General
Civil Division
U. S. Department of Justice
GERALD C. KELL
Senior Trial Counsel
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, DC 20004
(202) 514-1586
Attorneys for Plaintiff

RAKESH M. AMIN
Amin Law, LLC
217 North Jefferson Street
Suite 500
Chicago, IL 60661
(312) 327-3382
DARREN S. RIMER (CA Bar No. 179696)
Rimer & Mathewson LLP
28202 Cabot Road, Suite 300
Laguna Niguel, CA 92677
(949) 367-1541
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civ.S-05-2361DFL KJM |
| ) | |
| v. ) | |
| ) | CONSENT DECREE OF |
| MBI DISTRIBUTING, INC., a corporation d/b/a ) | PERMANENT INJUNCTION |
| Molecular Biologics, and NED L. JENSEN ) | |
| and DOMINGO C. ESCOBIN, JR., individuals, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, the United States of America, by its undersigned attorneys, having filed a Complaint for Injunction against MBI Distributing, Inc., a corporation doing business as Molecular Biologics, and Ned L. Jensen and Domingo C. Escobin, Jr., individuals (collectively, "Defendants"), and Defendants having appeared and having consented to entry of this Consent Decree of Permanent Injunction (the "Decree") without contest and before any testimony has been taken, and the United States of America having consented to the Decree,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action and has personal jurisdiction over all parties to this action.

2. The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-397 ("the Act").

3. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(a), by introducing and causing to be introduced, and delivering and causing to be delivered for introduction, into interstate commerce articles of drug, as defined by 21 U.S.C. § 321(g)(1), that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), in that they have been manufactured, processed, packed, labeled, held, and distributed in violation of current good manufacturing practice ("CGMP").

4. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing the adulteration within the meaning of 21 U.S.C. § 351(a)(2)(B) of articles of drug, as defined by 21 U.S.C. § 321(g)(1), after shipment of one or more of their components in interstate commerce.

5. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(a), by introducing and causing to be introduced, and delivering and causing to be delivered for introduction, into interstate commerce articles of drug, as defined by 21 U.S.C. § 321(g)(1), that are misbranded under 21 U.S.C. § 352(f), in that they fail to bear such adequate warnings against unsafe dosage or methods or duration of administration or application, in such manner or form, as are necessary for the protection of users.

6. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f), in that they fail to bear such adequate warnings against unsafe dosage or methods or duration of administration or application, in such manner or form, as are necessary for the protection of users.

7. The Complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(d), by introducing and causing to be introduced, and delivering and causing to be delivered for introduction, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(b) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(I).

8. Upon entry of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly manufacturing, processing, packing, labeling, holding, or distributing drugs at or from MBI Distributing Inc.'s facilities at 4740 East Second Street, Benicia, California, and any other locations at which Defendants may manufacture, process, prepare, pack, label, hold, or distribute drugs unless and until:

   A. Defendants' methods, facilities, and controls used to manufacture, process, pack, label, hold, and distribute ophthalmic drugs are established, operated, and administered in compliance with CGMP.  See 21 C.F.R. pts. 210 and 211;

   B. Defendants retain, at Defendants' expense, an independent person or persons (the "expert"), to make inspections of their drug manufacturing facilities to determine whether the methods, facilities, and controls are operated and administered in conformity with CGMP.  The expert shall be qualified by education, training, and experience to conduct such inspections, and shall be without personal or financial ties (other than the consulting agreement

between the parties) to Defendants or their immediate families.  Defendants shall notify FDA in writing of the identity of the expert as soon as they retain such expert.  The expert shall:

        i)      Perform a comprehensive inspection of Defendants' facilities and the methods and controls used to manufacture, process, pack, label, hold, and distribute ophthalmic drugs to determine whether they are in compliance with CGMP;

        ii)     Submit to FDA a full and complete written report prepared by the expert of the results of his or her inspection;

        iii)    When appropriate, certify in writing to FDA that Defendants' facilities, methods, and controls for ophthalmic drugs are in compliance with CGMP; and

    C.    Defendants ensure that those ophthalmic drugs that they manufacture, process, pack, label, hold, and/or distribute pursuant to the FDA monograph for ophthalmic drug products for over-the-counter human use in 21 C.F.R. part 349, are manufactured and labeled in strict compliance with the FDA monograph.  Defendants shall also ensure that any ophthalmic drugs they manufacture, process, pack, label, hold, and/or distribute that deviate from an FDA monograph are the subject of an approved new drug application under 21 U.S.C. § 355(b) or (j) or an effective investigational new drug application under 21 U.S.C. § 355(I);

    D.    Defendants ensure that any analgesic drugs that they manufacture, process, pack, label, hold, and/or distribute bear all warnings in the language required by the Act and FDA's regulations;

    E.    Defendants report to FDA in writing the actions they have taken to: (1) correct the CGMP deviations set forth in the Form FDA 483 dated March 8, 2005, and ensure that the methods used in, and the facilities and controls used for, manufacturing, processing, packing, labeling, holding, and distributing ophthalmic drugs are otherwise operated and administered in conformity with CGMP; (2) correct the misbranding violations alleged in the Complaint; (3) correct the unapproved new drug violations alleged in the Complaint; and (4) ensure that Defendants are in compliance with the Act, FDA's regulations, and the terms of this Decree; and

F. FDA notifies Defendants in writing that Defendants appear to be in compliance with the requirements set forth in Paragraphs 8(A)-(E) and, if such notification is based upon one or more FDA inspections, Defendants have paid for such inspection(s) and other work at the rates specified in Paragraph 14.

9. After Defendants receive written notice from FDA pursuant to Paragraph 8(F) that they appear to be in compliance with Paragraphs 8(A)-(E) of this Decree, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined from directly or indirectly doing or causing to be done any act that:

A. Violates 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

B. Violates 21 U.S.C. § 331(k) by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

C. Violates 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are misbranded within the meaning of § 352(f);

D. Violates 21 U.S.C. § 331(k) by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f); or

E. Violates 21 U.S.C. § 331(d) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355(b) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(I).

10. After Defendants have complied with Paragraphs 8(A)-(E) and FDA has notified them pursuant to Paragraph 8(F), Defendants shall retain an independent person or persons (the "auditor") to conduct audit inspections of their drug manufacturing operations not less than once

every six (6) months for a period of five (5) years. If Defendants choose, the auditor may be the same person or persons retained as the expert in Paragraph 8(B).

    A.    At the conclusion of each audit inspection, the auditor shall prepare a written audit report (the "audit report") analyzing whether Defendants are in compliance with CGMP and identifying any deviations from CGMP ("audit report observations"). As a part of every audit report, except the first audit report, the auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous audit report observations. The audit reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than fifteen (15) business days after the date the audit inspections are completed. In addition, Defendants shall maintain the audit reports in separate files at their facility and shall promptly make the audit reports available to FDA upon request;

    B.    If an audit report contains any audit report observations, Defendants shall, within thirty (30) calendar days of receipt of the audit report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the audit report, Defendants believe that correction of the deviations will take longer than thirty (30) calendar days, Defendants shall, within ten (10) calendar days of receipt of the audit report, propose a schedule for completing corrections ("correction schedule"). That correction schedule must be reviewed and approved by FDA in writing prior to implementation. Defendants shall complete all corrections according to the approved correction schedule. Within thirty (30) calendar days of Defendants' receipt of an audit report, or within the time period provided in a correction schedule approved by FDA, the auditor shall review the actions taken by Defendants to correct the audit report observations. Within five (5) business days of beginning that review, the auditor shall report in writing to FDA whether each of the audit report observations has been corrected.

11. If, at any time after this Decree has been entered, FDA determines, based on the results of an inspection, the analyses of samples, a report or data prepared or submitted by Defendants, the expert, or the auditor, or any other information, that Defendants have failed to comply with any provision of this Decree, or have violated the Act or its implementing

regulations, or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, order Defendants in writing to take appropriate action, including, but not limited to, one or more of the following actions:

    A.    Cease manufacturing, processing, packing, labeling, holding, and distributing any or all drugs;

    B.    Revise, modify, or expand any report(s) or plan(s) prepared pursuant to this Decree;

    C.    Submit additional reports or information to FDA;

    D.    Recall specified drug products released or distributed by Defendants or that are under the custody and control of Defendants' agents, distributors, customers, or consumers. Defendants shall bear the costs of such recall(s); and/or

    E.    Take any other corrective action(s) as FDA, in its discretion, deems necessary to protect the public health or bring Defendants into compliance with the Act, its implementing regulations, or this Decree.

12. Any cessation of operations pursuant to paragraph 11(A) shall continue until FDA notifies Defendants in writing that Defendants appear to be in compliance with the Act, its implementing regulations, and the requirements of this Decree, and that Defendants may, therefore, resume operations.

13. Representatives of FDA shall be permitted to, without prior notice and as and when FDA deems necessary, make inspections of Defendants' places of business and take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree. During such inspections, FDA representatives shall be permitted access to buildings, equipment, in-process and finished materials, containers, and labeling therein; to take photographs and make video recordings; to take samples of Defendants' finished and unfinished materials and products, containers, and labeling; and to examine and copy all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any and all drug products, including components. The inspections shall be permitted upon presentation of a

copy of this Decree and appropriate credentials.  The inspection authority granted by this Decree is separate from, and in addition to, the authority to conduct inspections under the Act, 21 U.S.C. § 374.

14.     Defendants shall reimburse FDA for the costs of all FDA inspections, investigations, supervision, reviews, examinations, and analyses specified in this Decree or that FDA deems necessary to evaluate Defendants' compliance with this Decree.  The costs of such inspections shall be borne by Defendants at the prevailing rates in effect at the time the costs are incurred.  As of the date this Decree is signed by the parties, these rates are: $73.55 per hour and fraction thereof per representative for inspection work; $88.15 per hour and fraction thereof per representative for analytical work; $0.485 per mile for travel expenses; the government rate or equivalent for travel by air; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per day, per representative, for subsistence expenses where necessary.  In the event that the standard rates generally applicable to FDA supervision, inspection, review, examination, or analysis are modified, these rates shall be increased or decreased without further order of the Court.

15.     Within ten (10) calendar days after the entry of this Decree, Defendants shall provide a copy of this Decree, by personal service or registered mail, to each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, and post a copy of this Decree in the employee common areas at their manufacturing facilities.  Within thirty (30) calendar days of the date of entry of this Decree, Defendants shall provide to FDA an affidavit of compliance stating the fact and manner of compliance with the provisions of this paragraph and identifying the names and positions of all persons who have received a copy of this Decree.

16.     Defendants shall notify FDA at least fifteen (15) calendar days before any change in ownership or character of their business, such as dissolution, assignment, or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, or any other change in the corporate structure of MBI Distributing, Inc., or in the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect compliance with

1  this Decree.  Defendants shall provide a copy of this Decree to any potential successor or assign
2  at least fifteen (15) calendar days before any sale or assignment.  Defendants shall furnish FDA
3  with an affidavit of compliance with this paragraph no later than ten (10) calendar days prior to
4  such assignment or change in ownership.
5          17.     All notifications, certifications, reports, correspondence, and other
6  communications to FDA required by this Decree shall be addressed to the Director, FDA San
7  Francisco District Office, 1431 Harbor Bay Parkway, Alameda, CA 94502.
8          18.     Should the United States bring, and prevail in, a contempt action to enforce the
9  terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United
10 States for its attorneys' fees, travel expenses incurred by attorneys and witnesses, court costs,
11 expert witness fees, and investigational and analytical expenses incurred in bringing such action.
12         19.     Defendants shall abide by the decisions of FDA, which decisions shall be final.
13 When contested by Defendants, FDA decisions under this Decree shall be reviewed by the Court
14 under the arbitrary and capricious standard, 5 U.S.C. § 706(2)(A).  Review shall be based
15 exclusively on the written record before FDA at the time the decision was made.  No discovery
16 shall be taken by either party.
17         20.     This Court retains jurisdiction of this action for the purpose of enforcing or
18 modifying this Decree and for the purpose of granting such additional relief as may be necessary
19 or appropriate.
20     SO ORDERED:
21     Dated this 3 day of January 2006.

_____
DAVID F. LEVI
Chief United States District Judge

We hereby consent to the entry of the foregoing decree.

| | |
|---|---|
| s/Ned L. Jensen<br>NED L. JENSEN, on behalf of himself and as owner of MBI Distributing, Inc. | McGREGOR W. SCOTT<br>United States Attorney |
| | CATHERINE CERNA<br>Assistant U.S. Attorney<br>501 I Street, Suite 10-100<br>Sacramento, California 95814<br>(916) 554-2700 |
| s/Domingo C. Escobin, Jr.<br>DOMINGO C. ESCOBIN, JR., on behalf of himself | |
| | PETER D. KEISLER<br>Assistant U. S. Attorney General<br>Civil Division<br>U. S. Department of Justice |
| s/Rakesh M. Amin<br>RAKESH M. AMIN<br>Amin Law, LLC<br>217 North Jefferson Street<br>Suite 500<br>Chicago, IL 60661<br>(312) 327-3382 | s/Gerald C. Kell<br>GERALD C. KELL<br>Senior Trial Counsel<br>Office of Consumer Litigation<br>U.S. Department of Justice<br>P.O. Box 386<br>Washington, DC 20004<br>(202) 514-1586 |
| s/Darren S. Rimer<br>DARREN S. RIMER (CA Bar No. 179696)<br>Rimer & Mathewson LLP<br>28202 Cabot Road, Suite 300<br>Laguna Niguel, CA 92677<br>(949) 367-1541 | Attorneys for Plaintiff |
| Attorneys for Ned L. Jensen, Domingo C. Escobin, Jr., and MBI Distributing, Inc. | |
| | Of Counsel: |
| | ALEX M. AZAR II<br>General Counsel<br>Department of Health and Human Services |
| | SHELDON BRADSHAW<br>Chief Counsel<br>Food and Drug Division |
| | ERIC M. BLUMBERG<br>Deputy Chief Counsel for Litigation |
| | JENNIFER L. ZACHARY<br>Office of the General Counsel<br>5600 Fishers Lane, Rm. 6B-18<br>Rockville, MD 20857 |